## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INDEPENDENT SCHOOL DISTRICT ) | |
| NO. 1 OF OKLAHOMA COUNTY, ) | |
| OKLAHOMA, a/k/a PUTNAM CITY ) | |
| SCHOOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIV |
| v. ) | |
| ) | |
| TRACY CUMMINGS, as parent and next ) | |
| friend of B.C., a minor, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff alleges and states as follows for its cause of action against Defendant:

1.      Plaintiff Independent School District No. 1 ("Plaintiff" or "District") is a political

subdivision of the State of Oklahoma which receives federal funds to implement the provisions of

the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. §1400 et seq.  Plaintiff is

located in and operates schools in Oklahoma City, Oklahoma and is within the venue of this Court.

2.      Tracy Cummings ("Parent" or "TC") is the parent of B.C. ("Student" or "BC").  BC

is a special education student who is categorized as a student with an emotional disturbance

according to IDEA.  TC and BC reside in Oklahoma City, Oklahoma and are within the venue of this

Court.

3.      This case is an appeal of a due process decision rendered under IDEA.  This Court

has jurisdiction pursuant to 20 U.S.C. §1415(i)(2)[1] and 34 C.F.R. §300.513.

---

[1]  All references to IDEA are to the law as it existed prior to the amendments which became

effective on July 1, 2006.  See Public Law 108-446: Section 1 provides that the act may be cited as

4.     At all relevant times, BC was enrolled in and attended District's schools.  She attended District's schools for the 2002-2003, 2003-2004, and 2004-2005 school years and is currently attending a District school.

5.     The placement for a special education student is determined by a group of individuals consisting of a regular education teacher, a special education teacher, an administrative representative for the District, and the student's parent.  This group is called the IEP team, and they prepare an Individualized Education Program ("IEP") which governs the services provided to Student and determines the placement of Student in order for Student to receive services.

6.     During the years she has attended school within the District, BC has exhibited difficulty with the regular school setting and following school rules.  She runs away from staff members, wanders the hallways, is physically and verbally abusive with teachers and other staff, uses foul language, refuses to go to class or to do the assigned work, has hit another student, and is generally disruptive to the educational environment.  She does not function well in unstructured situations and needs a great deal of structure to be successful academically and behaviorally.

7.     Over the course of three (3) school years, District has tried various interventions including, but not limited to, a full-time assistant to escort Student to/from classes, a shortened school day, more time in special education classes, a daily report of behavior to the parent, a reward system for good behavior, accommodating her when a substitute is in a class and allowing her to go to another class, providing her with a time out/cooling off period, assigning her to a male special education teacher, and utilizing a non-confrontational approach.

---

the "Individuals with Disabilities Education Improvement Act of 2004." Section 2 provides that Title I of the Act are amendments to the Individuals with Disabilities Education Act.  Section 302(a) provides that the amendments specified in Title I shall be effective on July 1, 2005.

8.      In addition to the various interventions used with Student, at various times throughout her educational career within the District, Student has attended District's Evening Program.  During the 2002-2003 and 2003-2004 school years, she attended the Evening Program with Parent's consent and agreement.  The Evening Program is a very structured program consisting of two (2) hours per day with a teacher-student ratio of 1 to 3 or less.   Student has been very successful in the Evening Program; she has made good grades, had good attendance, and her behaviors have been substantially reduced when she attends the Evening Program.

9.      In January 2005, the IEP team recommended that Student's placement be changed from the regular school setting to the Evening Program.  Parent refused the proposed change of placement and filed a request for a due process hearing to determine the appropriateness of the proposed placement.  That due process was settled on February 17, 2005 by leaving BC at the regular middle school where she had been attending and implementing a new Behavior Intervention Plan ("BIP") with a variety of positive behavior supports.

10.      The new BIP provided a variety of positive behavior supports, including a full-time assistant to escort BC for class changes and to provide supervision during unstructured times such as lunch, delayed passing time between classes, providing alternative elective courses in the special education classroom environment, and daily communication with Parent regarding the student's behavior.  Positive consequences were established such as a token economy system whereby Student would earn rewards for returning the communication notebook, increased computer time, positive notes sent home, and independent reading time.   Consequences were also established for non-compliance with school rules.

11.     In March of 2005, District recommended a change of placement to the Evening Program for the remainder of the school year because Student's behaviors were significantly interfering with her education and the education of others.  Again, Parent refused to consent to the change of placement and filed a request for a due process hearing.  Parent dismissed this due process request in May 2005 as the school year was ending.

12.     On June 3, 2005, the IEP team met to review the BIP and discuss Student's placement for the 2005-2006 school year.  The IEP team members, except for Parent, proposed changing BC's placement to the Evening Program for the 2005-2006 school year because her behaviors were preventing her from being successful in the regular school setting even with the positive behavior supports and supplementary aides set forth in her IEP and BIP.  Her behavior during the 2004-2005 school year resulted in numerous disciplinary actions, poor attendance, and poor academic performance.  BC was going to be a freshman in high school for the 2005-2006 school year, and the IEP team felt that the regular high school setting with approximately 2000 students would be overwhelming to her.  Parent refused to sign the IEP incorporating the change in placement to the Evening Program for the 2005-2006 school year.

13.     As a result of Parent's refusal to agree to a change in placement, District filed for due process as provided by IDEA.  District sought a determination that the proposed placement of BC in the Evening Program would provide her with a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") given the nature and severity of her disability.

14.     Additionally, Parent filed for due process seeking a determination that the proposed placement denied FAPE to Student and a determination that Student was entitled to extended school year ("ESY") services.

15.     Oklahoma has adopted a two-tier due process system whereby a hearing officer conducts the due process hearing and renders a decision.  The Hearing Officer ("HO") hears the testimony of the witnesses and makes determinations of credibility.  The HO renders a decision which may be appealed to an Appeal Review Officer ("ARO").  An ARO is authorized to make an independent decision based upon a review of the record and may take additional evidence if necessary.  20 U.S.C. §1415(c); 34 C.F.R. §300.510.

16.     In this case, the Hearing Officer, Dale Ellis, conducted a hearing over the course of three (3) days.  He heard from eight (8) witnesses, including Student and Parent, and considered over 60 exhibits, before rendering a decision in favor of the District.

17.     The HO spent considerable time during the three (3) days of hearing attempting to determine what would constitute an appropriate placement for BC and concluded that placement in the Evening Program would provide BC with FAPE in the LRE.  The HO ordered the District to "explore all avenues available with the goal of incrementally increasing Student's daily successes and exposing her to more outside stimuli, additional classes, teachers and students where possible. When student has made substantial progress towards meeting her BIP and IEP goals, every effort shall be made to move her forward as quickly as possible."

18.     BC timely appealed the HO's decision to an Appeal Review Officer.

19.     After reviewing the record and considering the briefs of counsel for both District and Student, the ARO reversed the HO's decision finding that District did not meet its burden of proof and that the proposed Evening Program did not provide FAPE to BC  The ARO did conclude that BC did not require a private placement and that Student failed to meet her burden of proof with respect to her request for ESY services.

20.     Plaintiff has therefore exhausted all administrative remedies under IDEA prior to bringing this suit.

21.     The decision of the ARO is contrary to the evidence presented at the hearing and contrary to the applicable law.  The ARO failed to give appropriate deference to the witness credibility determinations of the HO and failed to apply the applicable standards of law as to the LRE in which BC may receive FAPE.

22.     In IDEA cases, the standard of judicial review requires that the court "independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving 'due weight' to the administrative proceedings below." *Murray v. Montrose County School Dist. RE-IJ,* 51 F.3d 921, 927 (10th Cir. 1995).   The court engages in a modified *de novo* review.  *Erickson v. Albuquerque Public Schools*, 199 F.3d 1116, 1120 (10th Cir. 1999).

Wherefore, Plaintiff requests that the Court review the evidence contained in the administrative record, determine if additional evidence is necessary, and render a decision that District's proposed placement of BC in District's Evening Program provides BC with FAPE in the LRE given the nature and severity of BC's disability.

S/Laura L. Holmes
OBA# 14748
Attorney for Plaintiff
The Center for Education Law, Inc.
900 North Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile:  (405) 528-5800
LHolmes@cfel.com